## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE

|  |  |  |
|---|---|---|
| **D.T., a minor, by and through his parents B.K.T. and B.H.T.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SUMNER COUNTY SCHOOLS and VENA STUART ELEMENTARY SCHOOL,** | ) | **Judge** |
| | ) | |
| | ) | **Magistrate** |
| | ) | |
| **Defendants.** | ) | |

## VERIFIED COMPLAINT

NOW COME Plaintiffs D.T., a minor, by and through his parents B.K.T. and B.H.T.[1] ("Plaintiffs"), by and through counsel, and for their Verified Complaint against Defendants Sumner County Schools ("District") and Vena Stuart Elementary School ("VES") hereby state as follows:

## Parties

1.      D.T., whose date of birth is 07/24/2010, is a minor child with a disability, primary diagnosis of Autism.  He is eligible for special education and related services under the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et seq. ("IDEA") and protection under Section 504 of the Rehabilitation

---

[1] Plaintiffs are identified with initials pursuant to Fed.R.Civ.P. 5.2 so as to protect the identity of the minor child as such would be obvious if the full name of the parents were pleaded.

Act, 29 U.S.C. §794 ("§504"); the Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.* ("ADA"); Tennessee's Special Education Law, T.C.A. §49-10-101 *et seq.*; and the Tennessee Disability Act, T.C.A. §8-50-103 ("TDA").

2.     B.K.T. and B.H.T. are D.T.'s parents who reside with D.T. at 444 Wemyss Street, Gallatin, TN 37066.

3.     District is a Local Educational Agency ("LEA") as that term is defined by 20 USC §1401(19) and 34 CFR §300.28 and a public agency of the State of Tennessee with its principal place of business located at 695 E Main St, Gallatin, TN 37066.  District is a public school system in the State of Tennessee and an arm of the Tennessee Department of Education ("TNDOE") and, upon information and belief, receives federal funding.  As such, it is responsible for ensuring compliance with all mandates arising under the numerous federal statutes for providing special education to the school age students residing within its district.

4.     VES is a Local Educational Agency ("LEA") as that term is defined by 20 USC §1401(19) and 34 CFR §300.28 and a public agency of the State of Tennessee with its principal place of business located at 780 Hart St, Gallatin, TN 37066.  VES is a public school in the State of Tennessee and an arm of the Tennessee Department of Education ("TNDOE") and, upon information and belief, receives federal funding.  As such, it is responsible for ensuring compliance with

all mandates arising under the numerous federal statutes for providing special education to the school age students residing within its district.

5.    VES is a necessary party to this action pursuant to Fed.R.Civ.P. 19 because without the VES this Court cannot grant full relief.

## Jurisdiction and Venue

6.    The Court has subject matter jurisdiction over this action pursuant to federal question jurisdiction 28 U.S.C. §1331, premised upon the Federal Declaratory Judgment Act, 28 U.S.C. §2801 and the Individuals with Disabilities Education Act, 20 U.S.C. §§1400 et seq. ("IDEA"), Section 504 of the Rehabilitation Act, 29 U.S.C. §794 ("§504"), and the Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.* ("ADA").

7.    The Court has personal jurisdiction over the Defendants because they are arms of the Tennessee government.

8.    Venue is proper pursuant to 28 U.S.C. §1391 as all the events giving rise to the claims herein occurred in this District.

## Factual Background

9.    As a child with a disability, D.T. was first deemed eligible by District in 2013 and reconfirmed eligibility in 2015.

10.     For the 2016-17 school year, Plaintiffs enrolled D.T. in kindergarten at the Goodpasture Christian School, a private school in Madison, Tennessee, where he received special education services paid for by Plaintiffs.

11.     By winter / spring of 2017, it became evident to Plaintiffs and the staff at Goodpasture that D.T. was not making appropriate progress in that placement.

12.     In March 2017, Plaintiffs transferred D.T.'s enrollment to The Edison School, a private school, in Gallatin, Tennessee.

13.     Unfortunately, even in a small group setting, D.T. was unable to make appropriate, meaningful progress at The Edison School.

14.     Plaintiffs concluded that neither The Edison School nor Goodpasture was an appropriate least restrictive environment ("LRE") for D.T.

15.     The only documented progress D.T. made during the 2016-2017 academic year was through his home-based program funded by Plaintiffs that he attended after school.

16.     During the summer of 2017, Plaintiffs made an appointment for D.T. with Developmental Pediatrician Cecelia McCarton, M.D. ("Dr. McCarton"), during which a psychoeducational evaluation was conducted. The results of this testing affirmed that D.T. did not make adequate progress in his educational placements of Goodpasture and The Edison School. Dr. McCarton also expressed concerns about D.T. presenting signs of another disorder, common among children

with Autism, called Central Auditory Processing Disorder (CAPD). Dr. McCarton made numerous recommendations for an appropriate educational program for D.T.

17.    Heeding Dr. McCarton's advice, D.T.'s parents immediately increased the number of hours of D.T.'s home-based program to approximately (30) hours per week at their own expense, recognizing that D.T. would continue to be at serious educational and developmental risk if he was to return to The Edison School.

18.    D.T.'s parents are not educators and did not feel competent to administer a homeschool program that would meet D.T.'s needs.

19.    D.T.'s parents planned to contact Defendants to seek out an appropriate Individualized Educational Program ("IEP") for D.T. pursuant to the public agency's obligation to provide children with a disability a Free Appropriate Public Education ("FAPE") under IDEA.

20.    In September 2017, Plaintiffs paid for an auditory processing evaluation for D.T., which confirmed D.T.'s diagnosis of a Central Auditory Processing Disorder ("CAPD").

21.    On September 27, 2017, D.T.'s parents contacted Jessica Thurman, Principal of Vena Stuart Elementary, D.T's designated home school within Defendants school district, requesting an IEP meeting to discuss developing and implementing an IEP for D.T. based on Dr. McCarton's recommendations.

22.     An IEP meeting was held on October 18, 2017, during which Defendants fully accepted the private evaluations submitted by Plaintiffs.

23.     Defendants conducted no evaluations of their own.  Defendants only sought consent to conduct curriculum-based measurements and observations and Plaintiffs consented.

24.     During the 10/18/17 IEP meeting, Defendants encouraged D.T.'s parents to bring D.T. to school the next day and represented that D.T. would be provided with a FAPE, despite Plaintiffs' concerns that an IEP was not in place as yet.

25.     During the same 10/18/17 IEP meeting, D.T.'s parents requested that District's staff observe D.T.'s home-based program.  Plaintiffs also requested that they be allowed to inspect the testing instruments for the curriculum-based measurements pursuant to T.C.A. §49-2-211(b)(1) prior to testing by Defendants. Plaintiffs also requested a copy of the policy regarding the testing protocols, specifically parental observation of testing.  None of these requests were granted, nor were reasons for the denials offered.

26.     On October 20, 2017, Melanie Webster ("Webster"), District's Attendance Supervisor and Special Education Coordinator for Preschool, sent an email threating Plaintiffs with truancy charges regarding D.T.'s attendance at District. Webster was aware of Plaintiffs' contacts with District to develop an IEP

for D.T. and continuing home-based services funded by Plaintiffs. Webster was also aware of Plaintiffs' willingness to enroll D.T. in District once an appropriate IEP was put in place.

27.    In response to Webster's threats of truancy charges and to placate enrollment requirements during the IEP development process, D.T.'s parents submitted paperwork on October 21, 2017 simultaneously enrolling D.T. in District and making a referral for homebound educational services to be offered in conjunction with D.T.'s existing home-based program. With this submission, Plaintiffs also provided a letter from D.T.'s physician stating that he should not be removed from his current home-based program until another appropriate educational plan could be developed, since doing so could result in "permanent damage to his growth and development".

28.    On October 23, 2017, District responded to Plaintiffs that District's homebound teacher was out due to a death in the family, but that a homebound services request would be emailed to D.T.'s parents right away. That paperwork was sent to D.T.'s parents on October 24, 2017. It was completed by D.T.'s parents and returned to the school. D.T.'s parents also offered to pick up assignments from the school until homebound services could be implemented.

29.    On October 24, 2017, four members of District's staff observed D.T.'s home-based program for a period of two (2) hours collectively. District did not

send a BCBA or Autism Specialist to this observation. During each hour period, observers were able to witness the home-based therapist successfully work with D.T. on numerous goals.  D.T.'s parents were not given a copy of the home observation report until after November 13, 2017.

30.     On or about October 27, 2017, curriculum-based measurements and observations of D.T. were conducted by District at VES. Upon their completion, D.T.'s parents requested that the results be shared with them as soon as possible so that an IEP meeting could be scheduled.

31.     District offered November 13, 2017 as the first available date for an IEP meeting.

32.     Having received no calls regarding assignments or any information about homebound services in general, Plaintiffs contacted District to inquire about the status of homebound services on November 6, 2017.  In response, District said that Plaintiffs do not qualify for homebound services because there is no medical necessity for such services. Defendants said that placement was left for discussion during the November 13, 2017 IEP meeting.  Thus, Defendants had predetermined that homebound services were not appropriate for D.T. prior to any discussion at an IEP meeting.

33.     Throughout this process, Webster continued to threaten Plaintiffs with truancy charges.

34.     Throughout this process, Plaintiffs repeatedly asked District for assistance in dealing with the Attendance Department's truancy threats as they continued to work toward an appropriate IEP.  District refused each of these requests.

35.     Plaintiffs continued to communicate with District's Attendance Department to notify them of D.T.'s continuing home program and that they were moving the IEP process along as quickly as they could.

36.     On numerous occasions, D.T.'s mother requested a copy of the policy that outlines the appeals procedure for unexcused absences as outlined in state law. Webster refused to produce any such document to Plaintiffs. Eventually, Webster admitted that no such policy exists.

37.     Despite the recommendation from D.T.'s physician that he remain in his home-based program until an appropriate IEP could be developed and implemented, Webster proposed in a November 8, 2017 email that Plaintiffs "1. Enroll in Independent Home School. 2. Attend VES with strategies shared with his teacher regarding methods that are successful with D.T."  District's proposal essentially placed the responsibility for FAPE in Plaintiffs' hands in violation of IDEA.

38.     After D.T.'s parents sent numerous emails inquiring about the homebound placement, District sent an email referencing the fact that homebound

placement for students eligible for IEPs are decided by the IEP team under Tennessee's Special Education Regulations. If D.T. did not have access to his home-based program provided by therapists at the expense of Plaintiffs, he would have sustained 15 school days without educational opportunity of any kind. It is also important to note that D.T.'s mother followed the exact procedure outlined on District's website regarding the process for referral for Homebound Services.

39.    An IEP meeting was held for D.T. on November 13, 2017 (the "11/13/17 IEP meeting").

40.    During the 11/13/17 IEP meeting, the IEP team incorporated the evaluations previously submitted by Plaintiffs to establish Present Levels of Academic and Functional Performance ("PLAAFP") and formation of goals, but District's members of the IEP team completely ignored the explicit recommendations regarding placement made by Dr. McCarton and Plaintiffs' other paid therapists. The home-based program is appropriate and successful for D.T.

41.    Also, during the 11/13/17 IEP meeting, D.T.'s mother submitted an annotated IEP form indicating the changes and deletions that she was requesting as part of her Parental Concerns document, but these were not included in the IEP.

42.    D.T.'s mother requested Prior Written Notice ("PWN") on why the recommended home-based program request was denied. Defendants issued a PWN without addressing the refusal to provide the home-based program.

43.     Following the 11/13/17 IEP meeting, Plaintiffs contacted District to request an opportunity for Plaintiffs' and their private therapist to observe the proposed setting at VES.

44.     On November 21, 2017, the requested observation of VES took place for a period of one hour as per school policy by D.T.'s mother and Plaintiffs' private therapist Mickelwright.  Micklewright found that, in her professional opinion, the VES settings did not look appropriate for D.T.

45.     Due to District's continued threats of truancy charges and its denial of the homebound placement for D.T., D.T.'s parents allowed him to begin attending VES on November 27, 2017.

46.     The IEP team met again on December 5, 2017 (the "12/5/17 IEP meeting").

47.     At the 12/5/17 IEP meeting, Defendants had its attorney Melinda Jacobs attend to collect information.  Her presence had a chilling effect on D.T.'s parents' participation in the meeting.

48.     Defendants refused to include all of the goals requested by D.T.'s parents.  Defendants refused to honor the recommendations set forth in the parent-provided evaluations.

49.     The 12/5/17 IEP was not adequately designed and not reasonably calculated for D.T. to make appropriately ambitious progress in light of his circumstances.

50.     Because of the continued threats of truancy charges by Defendants, on December 13, 2017, Plaintiffs consented to the 12/5/17 IEP and District's offer of FAPE with multiple objections noted, not least of which is that the 12/5/17 IEP was inadequate to meet D.T.'s needs.

51.     Plaintiffs continued to assert that the home-based program was appropriate and that D.T. was making progress therein.

52.     Plaintiffs reduced D.T.'s therapy at home from approximately 30 hours/week to 2 hours/week when D.T. started at VES on November 27, 2017. The two hours per week was continued for monitoring progress or regression.

53.     During the 67 calendar days from November 27, 2017 until February 2, 2018 while at VES, D.T. sustained "staggering regression", including loss of speech, loss of mastered skills, increased echolalia and scripting, and, alarmingly, a never-before-seen presentation of aggressive and maladaptive behaviors in the home environment, as evidenced by video footage, data collected during that time, and parent and therapist reports.

54.     On January 17, 2018, Plaintiffs provided notice to District that they would remove D.T. from VES effective February 1, 2018, return him to his home-

based program, and that they would be seeking reimbursement from District for such private placement. (A true and correct copy of the January 17, 2018 email is attached hereto as Exhibit A.)

55. At or about February 1, 2018, Plaintiffs removed D.T. from VES and transferred him to Hope Autism and Behavioral Health Services in Nashville, Tennessee, a private facility paid for by Plaintiffs.

56. District replied that it was standing behind the 12/5/17 IEP as offered with no changes or improvements.

57. Despite expressed concerns by Dr. McCarton about potential regressions by D.T. without 12 month continuous services, District also denied Plaintiffs' request for Extended School Year ("ESY") services during the lengthy holiday break.

58. In addition, bad weather caused numerous cancellations of school during this period. During the time in which D.T. was attending VES under his IEP, he received only 15 days of services due to the holiday break and school cancellations.

59. When D.T. returned to the recommended home-based program, he began to recoup the skills lost while at VES and began to make appropriately ambitious progress.

60. District renewed its threats of truancy charges against Plaintiffs.

61.     In response, D.T.'s mother began sending weekly requests for excused absences to the principal of VES.  Some requests were denied, but most requests went unanswered.

62.     The continuous threats of truancy charges by Webster caused a tremendous emotional burden on Plaintiffs, adding additional distress to a family already in panic-mode over their son's profound regression while at VES.

63.     On February 19, 2018, D.T.'s mother contacted Norma Dam ("Dam"), Director of Pupil Services for District, requesting a Homebound Services referral on different grounds, specifically D.T.'s regression and presentation of aggressive behaviors while at VES School.

64.     On February 21, 2018, Dam denied the request via email without inquiry as to the new factors stated in violation of the requirement to have an IEP meeting within 10 days of such request.

65.     On March 2, 2018, D.T.'s mother emailed District Director of Schools Del Phillips ("Phillips") and copied the Sumner County School Board, alerting them via a Gebser letter of continuous, distressing truancy threats that Plaintiffs had been receiving from Webster.  Phillips rejected Plaintiffs' pleas and would not consider the extenuating circumstances or District's failure to provide D.T. with a FAPE.

66.     On March 9, 2018, Webster, as the designated representative of

District, filed a Truancy Petition against Plaintiffs in Sumner County Juvenile

Court with Docket No. 18-000815.[2]  The Truancy Petition is set to be heard on

May 31, 2018.  (A true and correct copy of the Truancy Petition is attached hereto

as Exhibit B.)

## COUNT ONE – FEDERAL DECLARATORY JUDGMENT ACT
### (Conflict Between IDEA and State Truancy Law)

67.     Plaintiffs repeat and reallege the preceding allegations of this

Complaint and incorporate them herein by reference as if set forth in full.

68.     The Federal Declaratory Judgment Act provides that "In a case of

actual controversy within its jurisdiction, [exceptions omitted as inapplicable], any

court of the United States, upon the filing of an appropriate pleading, may declare

the rights and other legal relations of any interested party seeking such declaration,

whether or not further relief is or could be sought. Any such declaration shall have

the force and effect of a final judgment or decree and shall be reviewable as such."

28 U.S.C. §2201(a).

69.     There is an actual and justiciable controversy between Plaintiffs and

Defendants District and VES as to whether federal IDEA law on private placement

---

[2] Oddly, the Petition is sworn and dated March 9, 2018, but the Affidavit attached is sworn and dated March 12, 2018.  This may be a violation of Court Rules.

prevails over the Tennessee truancy law by operation of the Supremacy Clause of the U.S. Constitution.

70.     Under IDEA, parents of a child with a disability who has been receiving special education and related services from the public school may remove such child from the public school and place the child in a private placement without the consent of such public school.  Further, the public school may be required to reimburse the parents for such private placement if the public school was failing to provide a FAPE to the child with a disability and the parents gave proper notice of the removal to the public school. 20 U.S.C. §1412(a)(10)(C); 34 C.F.R. §300.148.

71.     The Supremacy Clause of the U.S. Constitution states that federal law "shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."  U.S. Constitution, Article VI, Clause 2.

72.     The U.S. Supreme Court has held that if there is a conflict between a federal law and state law, the federal law prevails.  *See Cipollone v. Liggett Group, Inc.*, 505 US 504, 516 (1992) ("Thus, since our decision in *McCulloch v. Maryland*, 4 Wheat. 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." *Maryland v. Louisiana*, 451 U. S. 725, 746 (1981).")

73.     This same concept has been applied in the context of special education laws.  *RB ex rel. Parent v. Mastery Charter School*, 762 F. Supp. 2d 745, 762 (E.D.Pa. 2010) ("to the extent that IDEA might conflict with that state law, [IDEA] prevails under the Supremacy Clause of the Constitution.")

74.     "Parents enjoy rights under IDEA; and they are, as a result, entitled to prosecute IDEA claims on their own behalf. The decision by Congress to grant parents these rights was consistent with the purpose of IDEA and fully in accord with our social and legal traditions."  *Winkelman v. Parma City School Dist.*, 550 U.S. 516, 127 S.Ct. 1994, 2006 (2007).

75.     Defendants District and VES have initiated proceedings under Tennessee state truancy law to criminally punish Plaintiffs for D.T.'s absences from the public school without regard to any of their other legal rights.

76.     Plaintiffs have filed a due process complaint seeking reimbursement for the private placement of D.T., among other remedies.  (A true and correct copy of Plaintiffs' special education due process complaint is attached hereto as Exhibit C.)

77.     Thus, Plaintiffs' rights under IDEA supersede Defendants' pursuit of truancy charges under state law.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment declaring the rights between the parties as follows:

A.     That D.T. is entitled to protection under IDEA;

B.     That Plaintiffs have legal rights under IDEA which they may exert and enforce;

C.     That Plaintiffs have properly followed IDEA procedures for private placement of D.T., a child with a disability, and to seek reimbursement of same from Defendants;

D.     That federal IDEA law on private placement prevails over Tennessee's state truancy law;

E.     That Plaintiffs' pursuit of remedies, including without exhaustion reimbursement for private placement, for Defendants' violations of IDEA and failure to provide D.T. with a FAPE prevails over Defendants' charges against Plaintiffs under Tennessee's state truancy law;

F.     Defendants are enjoined from making any further efforts or taking any additional steps to pursue the truancy petition against Plaintiffs;

G.     That Plaintiffs' administrative hearing on their due process complaint against Defendants may proceed without hindrance or interference from the truancy case;

H.     That the truancy case should be dismissed as violative of the Supremacy Clause;

I.      That Plaintiffs are prevailing parties on the issues herein and therefore are entitled to monetary reimbursement for all expenses incurred by Plaintiffs herein, including but not limited to attorney's fees and costs; and

J.      Such other and further relief as this Court deems equitable and just.

## COUNT TWO – FEDERAL DECLARATORY JUDGMENT ACT
### (Conflict Between §504 and State Truancy Law)

78.     Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

79.     There is an actual and justiciable controversy between Plaintiffs and Defendants District and VES as to whether federal law prohibiting discrimination against students with disabilities prevails over the Tennessee truancy law by operation of the Supremacy Clause of the U.S. Constitution.

80.     Section 504 of the Rehabilitation Act of 1973, 29 USC §701 *et seq*. ("§504") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

81.     Denial of FAPE to a child with a disability is discrimination and a violation of §504.  34 C.F.R. §104.4.

82.     Retaliation is a form of discrimination under §504.

83.     D.T. has a "disability" as defined in §504 as his medical condition is a mental impairment which substantially limits one or more of his major life

activities, including but not limited to learning and communicating.  29 U.S.C. §705(20)(B).

84.    D.T. is an "individual with a disability" within the meaning of §504 because D.T.'s diagnosis of his medical condition substantially limits his ability to learn, communicate, and be educated.  29 U.S.C. §705(20)(A); 34 C.F.R. §104.3(j).

85.    D.T. is entitled to the protections against discrimination as provided by §504 and shall not, by reason of his disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 29 U.S.C. §794(a); 34 C.F.R. §§104.4, 104.31 and 104.33.

86.    Upon information and belief during all relevant time periods herein, District received federal funds to operate as a public facility providing education to the residents within its jurisdiction.

87.    District knew of D.T.'s disability because of his long period of eligibility established by District.

88.    By denying D.T. equal access to educational services, including but not limited to a denial of FAPE to D.T., and by subjecting D.T. to a hostile situation with District, District violated D.T.'s rights under §504 and the regulations promulgated thereunder.

89.     Plaintiffs are entitled to pursue private remedies against Defendants for violations of §504, including without limitation removal from VES and private placement for Defendants' denial of FAPE to D.T.

90.     Defendants may not file truancy charges in retaliation for Plaintiffs' exertion and enforcement of their legal rights under §504.

91.     By filing truancy charges against Plaintiffs, Defendants are discriminating against D.T. and his parents because of his disability and need for specialized services that Defendants are unable to provide and meet legal requirements, i.e. FAPE.

92.     Thus, Plaintiffs' rights under §504 supersede Defendants' pursuit of truancy charges under state law.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment declaring the rights between the parties as follows:

A.     That D.T. is entitled to protection under §504;

B.     That Plaintiffs have legal rights under §504 which they may exert and enforce;

C.     That Plaintiffs have the right to be free from discrimination by Defendants because of D.T.'s disability;

D.     That federal §504 law against discrimination of children with disabilities and their families prevails over Tennessee's state truancy law;

E.     That Plaintiffs' pursuit of remedies, including without exhaustion reimbursement for private placement, for Defendants' violations of §504 and failure to provide D.T. with a FAPE prevails over Defendants' charges against Plaintiffs under Tennessee's state truancy law;

F.     Defendants are enjoined from making any further efforts or taking any additional steps to pursue the truancy petition against Plaintiffs;

G.     That Plaintiffs' administrative hearing on their due process complaint against Defendants may proceed without hindrance or interference from the truancy case;

H.     That the truancy case should be dismissed as violative of the Supremacy Clause;

I.     That Plaintiffs are prevailing parties on the issues herein and therefore are entitled to monetary reimbursement for all expenses incurred by Plaintiffs herein, including but not limited to attorney's fees and costs; and

J.     Such other and further relief as this Court deems equitable and just.

## COUNT THREE – FEDERAL DECLARATORY JUDGMENT ACT
### (Conflict Between ADA and State Truancy Law)

93.     Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

94.     There is an actual and justiciable controversy between Plaintiffs and Defendants District and VES as to whether federal law prohibiting discrimination against students with disabilities prevails over the Tennessee truancy law by operation of the Supremacy Clause of the U.S. Constitution.

95.     The Americans with Disabilities Act of 1990 ("ADA"), 42 USC §12101 *et seq.* ("ADA") prohibits discrimination of children with disabilities in school and ensures that their civil rights are not violated.

96.     Denial of FAPE to a child with a disability is discrimination and a violation of the ADA.  28 C.F.R. §35.130.

97.     Retaliation is a form of discrimination under the ADA.

98.     As a child with a serious medical condition, D.T. has a "disability" as the disorder substantially limits one or more of his major life activities, including but not limited to learning and communicating, as set forth in the ADA. 42 U.S.C. §12102(1); 28 C.F.R. §35.104.

99.     D.T. is a "qualified individual with a disability" within the meaning of the ADA. 42 U.S.C. §§12132 and 12182; 28 C.F.R. §§35.130 and 35.149.

100. District knew of D.T.'s disability because of his long period of eligibility established by District.

101. D.T. is entitled to the protections against discrimination as provided by the ADA and shall not, by reason of his disability, be denied public accommodations or excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. 42 U.S.C. §§12132, 12181 and 12182; 28 C.F.R. §§35.130 and 35.149.

102. District, like all educational facilities receiving federal funds, is a public accommodation. 42 U.S.C. §12181(7)(j).

103. District failed in its responsibilities under the ADA and the regulations promulgated thereunder to provide its services, programs and activities in a full and equal manner to D.T., a disabled person, as described hereinabove, including failing to ensure that educational services are provided on an equal basis to a child with a disability and free of hostility towards D.T.'s disability.

104. District further failed in its responsibilities under the ADA to provide its services, programs and activities in a full and equal manner to D.T., a disabled person, as described hereinabove, by willfully failing to address all of his needs.

105. By denying D.T. a FAPE as described above, District has violated the ADA.

106.   Plaintiffs are entitled to pursue private remedies against Defendants for violations of the ADA, including without limitation removal from VES and private placement for Defendants' denial of FAPE to D.T.

107.   Defendants may not file truancy charges in retaliation for Plaintiffs' exertion and enforcement of their legal rights under the ADA.

108.   By filing truancy charges against Plaintiffs, Defendants are discriminating against D.T. and his parents because of his disability and need for specialized services that Defendants are unable to provide and meet legal requirements, i.e. FAPE.

109.   Thus, Plaintiffs' rights under the ADA supersede Defendants' pursuit of truancy charges under state law.

WHEREFORE, Plaintiffs demand that this honorable Court enter an Order and Judgment declaring the rights between the parties as follows:

A.     That D.T. is entitled to protection under the ADA;

B.     That Plaintiffs have legal rights under the ADA which they may exert and enforce;

C.     That Plaintiffs have the right to be free from discrimination by Defendants because of D.T.'s disability;

D.      That federal ADA law against discrimination of children with disabilities and their families prevails over Tennessee's state truancy law;

E.      That Plaintiffs' pursuit of remedies, including without exhaustion reimbursement for private placement, for Defendants' violations of the ADA and failure to provide D.T. with a FAPE prevails over Defendants' charges against Plaintiffs under Tennessee's state truancy law;

F.      Defendants are enjoined from making any further efforts or taking any additional steps to pursue the truancy petition against Plaintiffs;

G.      That Plaintiffs' administrative hearing on their due process complaint against Defendants may proceed without hindrance or interference from the truancy case;

H.      That the truancy case should be dismissed as violative of the Supremacy Clause;

I.      That Plaintiffs are prevailing parties on the issues herein and therefore are entitled to monetary reimbursement for all expenses incurred by Plaintiffs herein, including but not limited to attorney's fees and costs; and

J.      Such other and further relief as this Court deems equitable and just.

## COUNT FOUR - §504 DISCRIMINATION AND RETALIATION

110.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

111.    District and VES are retaliating against Plaintiffs for exerting their legal rights under §504 by filing and pursuing truancy charges against Plaintiffs.

112.    As a direct and proximate result of such discrimination and retaliation in violation of §504, Plaintiffs have been severely harmed.

WHEREFORE, Plaintiffs demand that this honorable Court enter Judgment against Defendants District and VES as follows:

A.      Compensatory damages in an amount in excess of $500,000.00;

B.      Monetary reimbursement for all expenses incurred by Plaintiffs herein, including but not limited to attorney's fees, expert fees, and costs; and

C.      Such other and further relief as this Court deems equitable and just.

## COUNT FIVE - ADA DISCRIMINATION AND RETALIATION

113.    Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

114.    District and VES are retaliating against Plaintiffs for exerting their legal rights under the ADA by filing and pursuing truancy charges against Plaintiffs.

115.   The discriminatory and retaliatory acts described in the preceding allegations of this Complaint by District and VES were engaged in with malice and/or reckless indifference.

116.   As a direct and proximate result of such discrimination and retaliation in violation of §504, Plaintiffs have been severely harmed.

WHEREFORE, Plaintiffs demand that this honorable Court enter Judgment against Defendants District and VES as follows:

A.   Compensatory damages in an amount in excess of $500,000.00;

B.   Punitive damages in an amount in excess of $1,500,000.00;

C.   Monetary reimbursement for all expenses incurred by Plaintiffs herein, including but not limited to attorney's fees, expert fees, and costs; and

D.   Such other and further relief as this Court deems equitable and just.

## COUNT SIX – INJUNCTIVE RELIEF

117.   Plaintiffs repeat and reallege the preceding allegations of this Complaint and incorporate them herein by reference as if set forth in full.

118.   Allowing the truancy petition by Defendants to proceed will cause irreparable harm to Plaintiffs, including but not limited to potential jail time and/or fines; setting D.T. back further in his education and Plaintiffs' pursuit of getting him special education and related services; interruption of such special education

and related services; harm to Plaintiffs' reputation in the community, which is strong; destroying relationships with peers, adults, staff, and service providers at District; devastating harm to Plaintiffs' psychological health; and devastating effects on D.T.'s psychological condition from which he may never recover.

119. Plaintiffs have filed this Verified Complaint which sets forth "specific facts . . . [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed.R.Civ.P. 65(b)(1)(A).

120. Plaintiffs are highly likely to succeed on the merits as set forth above because of the law and facts in their favor under IDEA, §504, and the ADA, regarding their ability to obtain remedies against Defendants in the Due Process case and/or in this Court.

121. The equities weigh in favor of Plaintiffs because protecting children with disabilities and their families to exert and enforce their legal rights under special education laws and to pursue private placement when the public school has failed to provide a child with a FAPE is far more important than District being able to pursue baseless criminal truancy charges as retaliation.

122. There is substantial public interest in the issues presented because they are capable of repetition yet evading review as well as the public policies behind the federal laws discussed previously in this Complaint.

123.   Defendants will not suffer any harm or prejudice by the relief sought in this Verified Complaint.

WHEREFORE, Plaintiffs demand that this honorable Court enter Judgment as follows:

A.   Enjoining Defendants District and VES from pursuing truancy charges against Plaintiffs;

B.   Enjoining the currently pending truancy petition and ordering the Sumner County Juvenile Court to dismiss such petition with prejudice;

C.   Enjoining Defendants District and VES's discriminatory behavior towards Plaintiffs, including without limitation retaliation;

D.   Monetary reimbursement for all expenses incurred by Plaintiffs herein, including but not limited to attorney's fees, expert fees, and costs; and

E.   Such other and further relief as this Court deems equitable and just.

Respectfully submitted,

/s/ Michael F. Braun
Michael F. Braun (BPR 032669)
Post Office Box 364
Brentwood, TN 37024
(615) 378-8942
mfb@braun-law.com

/s/ Robert Thurston

Robert Thurston (pro hac pending)
Thurston Law Offices LLC
100 Springdale Rd A3, PMB 287
Cherry Hill, NJ 08003
(856) 335-5291
rthurston@schoolkidslawyer.com